IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| 11500, LLC, a Missouri limited liability company, ) ) | |
| Plaintiff, ) ) | |
| v. ) | No. 08-6061-CV-SJ-FJG |
| ) ERIC L. CUMMINGS, d/b/a ) CAMBRIDGE HOLDINGS GROUP, INC., et al., ) ) | |
| Defendants. ) | |

## ORDER

Currently, pending before the Court is defendants' Motion to Transfer Venue (Doc. # 11) and Motion to Stay Further Action in this Case Pending the Court's Ruling on Defendants' Motion to Transfer Venue (Doc. # 13).

### I. BACKGROUND

11500, L.L.C. ("11500") is a Missouri limited liability company doing business in the State of Missouri with its principal place of business at 11500 Ambassador Drive, Kansas City, Missouri. 11500 brought suit against Eric Cummings, John Beard and their respective holding companies ("Defendants") for fraudulently inducing 11500 to pay up-front fees before securing re-financing for a $24 million building of the same name located in Kansas City, Platte County, Missouri. In fact, 11500 alleges that defendants never had any intention of funding the project. 11500 additionally alleges fraud by silence, breach of contract, breach of covenant of good faith and fair dealing, breach of fiduciary duties / constructive fraud, and two civil conspiracy charges relating

to an alleged on-going scheme by defendants to collect up-front fees without providing financing. All parties signed a Loan Commitment for Collateralized Financing ("Commitment") which included a forum selection clause. The clause reads:

> In the event of a dispute arising relative to the interpretation and/or performance of the terms and conditions of this Loan Commitment wherein legal proceedings ensue, any such legal proceeding must be initiated in the State of Georgia and the prevailing party in such legal proceedings shall be entitled to recover its legal fees from the non-prevailing party.

11500 brought suit to recover the up-front fees paid in the Circuit Court of Platte County, Missouri on May 1, 2008. Defendant removed the case to the Western District of Missouri on June 5, 2008 under diversity jurisdiction and an assertion that potential punitive damages sought by the Plaintiff would push the case past the $75,000 amount-in controversy threshold. Pending before the court is a motion to enforce the forum selection clause in the Commitment and transfer the case to the Southern District of Georgia. 11500 alleges that the Commitment was obtained by fraud making the forum selection clause unenforceable.

## II. STANDARD

Defendants have moved pursuant to 28 U.S.C. § 1404(a) to transfer venue, which governs the Court's authority in this case. 28 U.S.C. § 1404(a) provides three categories of factors to be considered: (1) convenience of the parties, (2) convenience of the witnesses, and (3) the interests of justice. Terra Int'l, Inc. v. Mississippi Chemical Corp., 119 F.3d 688, 691 (8th Cir. 1997), cert. denied, 522 U.S. 1029 (1997). The analysis of potential venue transfers "require[s] a case-by case evaluation of the

particular circumstances at hand and a consideration of all relevant factors." Id. (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).

### III. DISCUSSION

**A. Forum Selection Clause**

**1. Was it procured through fraud?**

The Eighth Circuit has not made a decision whether the interpretation of the validity of a forum selection clause is a matter of federal procedural law or state substantive law of contracts. Rainforest Café v. EklecCo, L.L.C., 340 F.3d 544, 546 (8th Cir. 2003). The Eighth Circuit has acknowledged a circuit split on the issue and has reserved judgment on the issue until a later date. M.B. Rests., Inc. v. CKE Rests., Inc., 183 F.3d 750, 752 n. 4 (8th Cir. 1999). Here both sides are operating under an assumption that federal procedural law applies, and the Eighth Circuit has indicated it agrees that in "diversity cases, federal law governs determination of what effect to give forum selection clause[s] in contract." Rainforest Café, 340 F.3d at 546 (citing Stewart Org., 487 U.S. at 31-32).

Forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). Forum selection clauses are unreasonable, and thus unenforceable if the "clause was invalid for such reasons as fraud or overreaching." Id. at 15. If the validity of the forum selection clause, which is subject to federal procedural law, is to be questioned by the existence of fraud, then the allegations of fraud must be analyzed by federal standards.

3

Fraud must be pled with particularity. M.B. Rests. v. CKE Rests., 183 F.3d 750, 752 (8th Cir. 1999) (citing Fed. R. Civ. P. 9(b)). The resisting party must allege the forum selection clause was procured through fraud, and state facts to support that claim. Id. at 752-53. Vague allegations of fraud are not enough to render the forum selection clause unenforceable. Marano Enterprises of Kansas. v. Z-Teca Rests., 254 F.3d 753, 757 (8th Cir. 2001). In Marano, the allegations were purely general and did not offer "specifics concerning what the fraud might have been or how it was perpetrated." Id. Alternatively, detailed allegations of fraud are sufficient to deny enforcement of a forum selection clause. Farmland Indus. v. Frazier-Parrott Commodities, Inc., 806 F.2d 848 (8th Cir. 1986) (the allegations specified the elaborate scheme), abrogated on other grounds by Lauro Lines S.R.L. v. Chasser, 490 U.S. 495 (1989). In Root v. GERS, Inc., No. 01 CV 326, 2002 WL 809539 (D. Neb. April 3, 2002), the court examined whether the specificity of pleading as to fraud fell closer to Marano or Farmland. Id. at *4-6. In Root, the court found that while the scheme to defraud was not nearly as elaborate as Farmland, it was pled with sufficient specificity in that the alleged facts, if true, would support a claim of fraud and was thus not in line with Marano. The same situation seems to exist in the instant case.

11500 alleges defendants did not have the capacity to provide financing within twenty-one days. Complaint at ¶ 34(c). 11500 adds that the ability to provide quick financing was a highly pertinent issue to contracting since the building was on the verge of foreclosure. Complaint at ¶ 13. 11500 additionally alleges a series of wire correspondence via e-mail from defendants to 11500 enticing the payment of up-front

4

fees using the guarantee of secured financing as the lure. Complaint at ¶ 95. Specifically, Cummings allegedly sent an e-mail stating he had "rounded up the capital for the deal . . ." on May 25, 2007 before two-thirds of the up-front fees were paid. Complaint at ¶ 30. The Court finds 11500 has sufficiently pled facts to support a claim of fraud in the inducement thereby removing the presumption of validity attached to the forum selection clause.

### 2. Does its scope cover the claims?

In determining venue, the court must consider if the claims being brought by the contracting parties are covered by the forum selection clause. Terra Int'l, 119 F.3d at 691. Forum selection clauses have been held to not apply to claims based on schemes to defraud that began before the contract was executed. Root, 2002 WL 809539 at *4-5 (citing Armco. Inc. v. North Atlantic Ins. Co., Ltd.¸68 F. Supp. 2d 330 (S.D.N.Y. 1999)). 11500 alleges fraud in the inducement of the contract, and the forum selection clause covers "dispute[s] arising relative to the interpretation and/or performance of the terms and conditions of this Loan Commitment . . . ." The most damaging allegations of fraud to defendants occurred nine days after signing the Commitment. *See* Complaint at ¶ 30. But, 11500 also alleges that on May 16, 2007, the Commitment's signing day, defendants sent an email stating "[s]end along $19,000 this morning and we have a deal." Complaint at ¶ 95(b). An email before the signing of a contract used as a basis of fraud falls squarely outside the four-corners of a contract signed later that day. The scope of the forum selection clause does not cover any claims regarding fraudulent inducement, and thus does not control all of the claims brought in this cause of action.

5

Since the forum selection clause is no longer presumed valid and the scope does not cover all of the claims, the Court proceeds to the § 1404(a) factors analysis to determine whether the motion to transfer venue should be granted.

**B. § 1404(a) Factors**

The three balancing factors under § 1404(a) analysis are the convenience of the parties, the convenience of the witnesses, and the interest of justice. The Court may consider a variety of factors, but it is "ultimately the Defendants' burden to show that the § 1404(a) factors weigh 'strongly' in their favor." Medicap Pharmacies, Inc. v. Faidley, 416 F. Supp. 2d 678 (S.D. Iowa 2006) (citing Gulf Oil Co. v. Gilbert, 330 U.S. 501, 508 (1947)).

**1. Convenience of the Parties**

Georgia would be more convenient for one of the two defendants. Missouri would be more convenient for 11500, the alleged victim of fraud. Neither defendant has any known ongoing contact with the State of Missouri. However, in consideration that the defendants willingly entered into a contract dealing with the securitization of a building located in Missouri and having traveled to Missouri to meet with 11500, the Court finds that the convenience of the parties is equally served in either Georgia or Missouri.

**2. Convenience of the Witnesses**

The party seeking transfer has the duty to identify specific, essential witnesses. Nelson v. Master Lease Corp., 759 F.Supp. 1397, 1402 (D. Minn. 1991). Defendants have identified no witnesses. 11500 lists a variety of a witness that defendants rightfully

6

refer to as irrelevant. Additionally, neither party would be inconvenienced, as they both aver, by the shipping of records in this modern age. Medicap Pharmacies, 416 F. Supp. 2d at 688 (citing Coker v. Bank of America, 984 F.Supp. 757, 766 (S.D.N.Y. 1997) (only slight weight given to shipping costs in this era). Thus, the Court finds the convenience of the witnesses is equally served in either Georgia or Missouri.

### 3. Interest of Justice

The forum selection clause, the location of events giving rise to the claim, the local interest in deciding the matter and the enforceability of the judgment are all considerations leading up to a finding of the interest of justice in § 1404(a) factor analysis. Id. at 688-90. Defendants only argue that the forum selection clause should be enforced, but the above analysis found that the presumption of validity attached to the forum selection clause no longer exists. 11500 argues the interests of judicial economy would not be promoted by transfer, and that its choice of venue should be respected, while the fraudulent forum selection clause should be given little or no weight. 11500 additionally argues its costs of litigating long-distance would be greater than defendants, and any judgment obtained in either court would be enforceable in both states. The Court does not find that any of the above factors are dispositive but rather finds that the factors are neutral, and thus the defendants have not overcome the heavy obligation to show the factors weighing strongly in their favor.

## IV. CONCLUSION

After weighing all of the considerations detailed above, the Court finds that defendants have failed to demonstrate any reason why this case should be transferred

7

to the Southern District of Georgia.  Accordingly, for the reasons stated above, the Court hereby **DENIES** Defendants' Motion to Transfer Venue (Doc. # 11).  As the Court has ruled on the Motion to Transfer Venue, defendants Motion to Stay Further Action is hereby **DENIED** (Doc. # 13).


Date:  10/22/08                                            **S/ FERNANDO J. GAITAN**, **JR.**
Kansas City, Missouri                              Fernando J. Gaitan, Jr.
                                                                             Chief United States District Judge